UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEARSON EDUCATION INC., ET AL,<br><br>    Plaintiffs,<br><br>-against-<br><br>GANGHUA LIU,<br><br>    Defendant | 2008 Civ. 06152 (KBF)<br><br>DEFENDANT GANGHUA LIU'S ANSWER<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS GANGHUA LIU's ANSWER
TO PLAINTIFFS' AMENDED COMPLAINT**

Defendant Ganghua Liu, a.k.a. Linda Liu, hereby answers[1] the Amended Complaint[2] of Pearson Education, Inc. ("Pearson") and John Wiley & Sons, Inc. ("Wiley"), as follows:

**ANSWER**

1. <u>First sentence</u>: Liu admits that Plaintiffs are among the most well known educational publishers in the world, denies that they are respected, and denies that they bring this action in response to consumer confusion or harm caused by Liu. <u>Second sentence</u>: Liu admits the description of "gray market" or "parallel" imports as popular definitions among many, but denies the implication that in this case the trademarks were not the same U.S. trademarks for all goods,

---

[1] On May 23, 2014, this Court ordered, adjudged and decreed that this case is closed, and advised Liu of her right to appeal. Docket No. 135. On May 28, 2014, Plaintiffs threatened to pursue this claim anyway by initiating a new round of discovery if Liu did not "walk away" from pursuing her rights. Accordingly, Liu files this Answer as a protective measure, in the event that Plaintiffs succeed in re-opening the case.

[2] Although styled as an "Amended Complaint," Plaintiffs' pleading is in reality an original Complaint with respect to a new allegation not made in the original Complaint. Liu prevailed on all claims against her in the original 2008 Complaint.

or that Plaintiffs did not have sole authority to affix the trademarks to all of the products, or that Plaintiffs were not the manufacturers, or that the sale of parallel imports in this case was not in furtherance of the highest purposes of copyright law to disseminate knowledge, science and the useful arts. <u>Third sentence</u>: Liu admits that she can now legitimately resell gray goods under the first sale doctrines of trademark law and copyright law, but denies the insinuation that there was ever a time when she could not. Liu denies that she has confused consumers, or made false or misleading statements or omissions regarding the nature, quality, characteristics, or identity of the tangible item that the consumer will actually receive. <u>Fourth sentence</u>: Denied, except to admit that, as this Court held in its Memorandum Decision and Order of October 22, 2014, Docket No. 98, that any confusion is unrelated to Liu's conduct:

> Not only are Plaintiffs' foreign textbooks clearly marked as such (*see id*. ¶ 15 [of the original 2008 complaint] (explaining that the foreign editions indicate "that the title is a 'Low Price Edition' and/or authorized for sale only in a particular country or geographic region'")), but any confusion consumers were to experience is separate and apart from Defendants conduct – Plaintiffs maintain full control over the quality of their trademarked goods; it is Plaintiffs' choice to use their trademarked goods, of variable quality, that they launch into the stream of commerce.

*Id*. at 3. <u>Fifth sentence</u>: Denied. <u>Sixth sentence</u>: Denied. This statement also violates Rule 11 of the Fed. R. Civ. Pro. <u>Seventh sentence</u>: Denied, except to admit that Plaintiffs falsely claim to be seeking injunctive relief (despite having put Liu out of business) and claim to be seeking damages (despite having admitted that Liu is indigent ("impecunious").

    2. Admitted.

    3. The first two sentences are admitted; the third is denied.

    4. Denied.

5. The first sentence is admitted. Liu lacks sufficient knowledge with respect to Pearson's alleged "innovative digital materials" to either admit or deny the second sentence, except that Liu admits that Pearson publishes under the names "Prentice Hall," "Longman," and "Addison Wesley."

6. The first sentence is admitted. The second sentence is admitted except for whether Wiley is "storied", because Liu is unsure what the term refers to in this allegation, but admits that it is "storied" insofar as having a reputation for price-gouging students in the United States and taking steps to make it harder to take advantage of lower-priced alternatives for the same textbook through secondary markets.

7. Admitted, except that, to the degree that "cross-border arbitrage business" means anything more than the lawful, constitutionally protected, and specifically encouraged by the U.S. Copyright Act business of buying noninfringing copies of textbooks as cheaply as she can find them and then reselling them for whatever price the market will bear, it is denied.

8. Admitted, except that, apart from educational institutions, Liu has no idea what is meant by "other learning environments," and therefore denies that portion.

9. Lacking knowledge as to Plaintiffs' investments, denied, but uncontested, except that the suggestion that they have built a "reputation of superior quality in the publishing industry" is denied (without denying that they may have attempted to do so).

10. Liu admits that Plaintiffs sell the same textbooks in different countries at different prices, but lacking knowledge or understanding as to the remainder of the allegation, denies it.

11. Liu lacks knowledge whether the so-called "U.S. Editions" are the "highest" quality, except that on information and belief, they sell copies with identical binding, paper and ink quality elsewhere, such as in the United Kingdom, but denies that the qualitative differences

alleged is are material (because any differences involve non-substantive features such as glossier paper), and denies that the substantive quality is any different (i.e., the substantive work of authorship) in that all so-called "versions" are identical "copies" as defined by Section 101 of the Copyright Act – that is, they are "copies" of a singular work of authorship regardless of how strong the cover is or how glossy the paper may be. Liu does not know the extent of the "features" and therefore denies the second sentence, except to admit that Plaintiffs prefer to force U.S. consumers to purchase more expensive hard cover copies in new condition, and deliberately frustrate means of obtaining cheaper paperback copies or used copies.

12. The first sentence is admitted insofar as the "different" versions contain non-substantive differences, but denied insofar as there is any implication that the copies are substantively different, as they are all copies of the same singular work of authorship, and equally meet course requirements for the assigned textbook. The second sentence is admitted with respect to the cover and "copyright page" of the textbooks, but denied with respect to the works of authorship themselves, as the so-called foreign editions are not derivative works, but are copies of the same singular work of authorship. The third sentence is admitted except for the term "generally", as Liu lacks knowledge of how generalized the practice is, and knows of instances in which this is not the case at all. The fourth and fifth sentences are admitted insofar as they refer to tying arrangements and bundling of disparate products, but denied insofar as it refers to the copyrighted and trademarked textbooks themselves. The last sentence is denied insofar as the allegation applies to any textbooks being sold by Liu, but Liu lacks knowledge whether Plaintiffs also make derivative works with different content in problem sets and testing materials.

13. Denied.

14. Admitted.

15. Liu admits that Pearson owns (and neither admits nor denies, lacking sufficient knowledge, whether Pearson is also an exclusive licensee of) various trademarks. Liu denies that the specific examples (by registration number) relate to any of the copies of textbooks that she sold, and notes that one of the registration numbers alleged is for supplements, which she has never sold, and Plaintiffs must know that the registration number given can't possibly involve Liu. Liu further admits that some of the marks may be "well-known" within certain specialized circles, but denies that the marks have any relevance whatsoever to the student purchasing the assigned textbook other than to make sure it is the one assigned.

16. Liu admits that Wiley owns various trademarks. Liu denies that the specific examples (by registration number) relate to any of the copies of textbooks that she sold, and notes that one of the registration numbers is not for textbooks at all, but for "educational pre-recorded sound and video recordings and film strips" and for "computerized on-line services" that Plaintiffs know Liu has never marketed, promoted or sold. Liu further admits that some of the marks may be "well-known" within certain specialized circles, but denies that the marks have any relevance whatsoever to the student purchasing the assigned textbook other than to make sure it is the one assigned.

17. Denied.

18. Denied insofar as the spurious "U.S. Edition" and "Foreign Edition" distinction is concerned, for both so-called "editions" are the same editions of the same works of authorship registered with the U.S. Copyright Office. That point is *res judicata*. In this very case, the Supreme Court held that the extent of and limitation on Plaintiffs' distribution right it identical, rejecting Plaintiffs' novel notion that, by printing copies offshore, they could escape the

limitations that the U.S. Copyright Act imposes on their distribution right. Denied with respect to the use of the present tense. Denied with respect to Valore.com (but a link to the valore.com URL redirects to valorebooks.com, and Liu admits having sold books through Valorebooks up until Plaintiffs entered into an unlawful agreement in restraint of trade to secure Valorebooks' agreement to block her lawful sales, which agreement continues in effect as far as Liu knows). Subject to those denials, Liu admits that she bought copies Plaintiffs sold abroad for less than what they sell them for in the U.S., and resold them at prices above what she paid for them but below Plaintiffs' suggested retail prices in the U.S., and at prices that were price-competitive with the prices of other U.S. retailers.

19. Denied.

20. <u>First sentence</u>: Denied, with the clarification that some parts are untrue and others are too vague and rhetorical to either admit or deny. <u>Second sentence</u>: Denied, except to admit that 100% of all U.S consumers do not "necessarily" know about the existence of Plaintiffs, of Plaintiffs' textbooks, or of the existence of any particular edition or any differences between editions (but for the sake of clarity, deny that Liu's customers seeking cheaper international editions did not know what they were seeking, as knowledge of the cheaper "foreign edition" copies is widespread among college students, and even various government entities encourage students to seek them out as a way of making their education more affordable). <u>Fourth sentence</u>: Denied.

21. Denied.

22. Denied. The allegation itself violates Rule 11 of the Federal Rules of Civil Procedure.

23. <u>First sentence</u>: Denied. <u>Second sentence</u>: Liu does not understand it, and therefore denies it, except that Liu admits that ISBN numbers are assigned to publishers for use on specific

titles without regard to where they are printed, that the ISBN system requires that the same ISBN be used for the same work regardless where printed or in what geographic market it is intended to be sold, and that Plaintiffs routinely affix two ISBNs to their so-called "foreign editions" (one of which is the same ISBN as the so-called U.S. edition) in an apparent effort to signal to foreign buyers that it is the same textbook while concurrently making it more difficult for U.S. consumers to find the cheaper copies of the works assigned by their professors. <u>Third sentence</u>: Denied, insofar as that the ISBN system specifically states, "All ISBNs are international. There is no such thing as a US ISBN," but admitted insofar as Plaintiffs have misused the IBSNs by assigning two different ISBNs to the same work as a barrier to price competition. <u>Fourth sentence</u>: Denied. <u>Fifth sentence</u>: Denied.

    24. Defendant admits that the so-called "U.S. Editions" (a distinction of no validity whatsoever, given that the Supreme Court has already established, in this case, that Liu's right to resell copies she owns is exactly the same, regardless of the edition) may, in some cases, have different covers and jacket designs from the so-called "Foreign Editions" (which likewise, as the Supreme Court made clear in this case – and Plaintiffs admit in ¶ 1 of their Amended Complaint – Liu is entitled by federal copyright law to sell without their consent). Liu admits that some of the advertisements may include images of the "U.S. edition" cover because ISBN databases used by Amazon, Valorebooks and others will automatically pull up the cover that relates to that ISBN, and admits that, because Plaintiffs routinely include an image of the "U.S. edition" cover on "Foreign Edition" copies such covers will *a fortiori* be included when a "Foreign Edition" cover is used, but denies that she represented that the "U.S. Edition" was what was being sold. Moreover, Plaintiffs have admitted, in discovery, that they have third party records indicating that she, in fact, notes that the actual cover may be different that the one supplied by the online

sales portal such as Amazon or Valorebooks. Liu denies the last sentence, which is a complete fabrication and in violation of Rule 11 of the Federal Rules of Civil Procedure, in that Plaintiffs know it to be a false allegation.

25. Denied.

26. Liu admits that Plaintiffs may have purchased lawful and legitimate, non-infringing copies of the cited titles and received them in this District, but denies that the purchasers of those copies (*i.e.*, Plaintiffs) were at all confused or misled by Liu's advertising, or that the advertising was in any manner false, except that Liu admits that Plaintiffs themselves do place misleading ISBN (and two different ISBNs on the same copy) and other information on certain cheaper copies in an effort to prevent consumers from matching the cheaper market substitutes. Liu denies that she did not disclose that the images in the cover might differ from the cover on the substantively identical textbook she was selling. Liu nevertheless admits that, due entirely to Plaintiffs' efforts to suppress price competition from the cheaper copies, and Plaintiffs' employment of deceptive and confusing "dual" ISBNs for the same titles, and Plaintiffs' routine use of the image of the so-called "U.S. Edition" embedded into the artwork for the so-called "Foreign Edition", the graphic thumbnail image that appeared in her advertisements might be different than the actual image on the textbook, which is why she always alerted customers that the cover might be different even though the contents were the same.

27. Denied.

28. Liu repeats the answers to the re-allegations by reference.

29. Denied.

30. Denied.

31. Denied.

32. Denied.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense: Abandonment

As noted in footnote 1, above, the claim is abandoned. On May 23, 2014, this court ordered this case closed (Docket No. 135), without objection from Plaintiffs.

### Second Affirmative Defense: Improper Venue

Liu is a resident of the State of Texas, none of the listed trademark registrants are in this District (one is based in Texas, one in Massachusetts, and two in New Jersey); Internet advertisements do not affect New York any more than they do Texas; all of Liu's inventory of textbooks is situated in Texas; all of Liu's business records are in Texas; and if Liu initiated any of the alleged conduct it would have been from Texas. Moreover, Liu's Texas state law claims for tortious interference with existing and prospective relationships will be brought in Texas now that this Court has declined jurisdiction over her state law claims.

### Second Affirmative Defense: Rule 11 Violation

The Amended Complaint violates Rule 11 of the Federal Rules of Civil Procedure, in that it is being presented for an improper purpose (to harass, and needlessly increase the cost of litigation) and with knowledge that the factual contentions have no evidentiary support. As recently as May 28, 2014, Plaintiffs' counsel raised the threat of this claim as leverage to persuade Liu to abandon her right to an appeal. And, even though Liu has already supplied evidence that Plaintiffs know that the factual contentions have no evidentiary support (Docket No. 129 at 4-5, and Attachment A, Docket No. 129-1), they have chosen to continue them, instead of voluntarily dismissing them, solely for such improper purposes.

### Third Affirmative Defense: Waiver

The Claim is waived. Although Plaintiffs were not obligated to make this new claim in their original Complaint, it became a compulsory counterclaim when Liu filed her counterclaims, in February 2009, because it arises out of the same transactions and occurrences alleged in Liu's Counterclaims, and does not require the addition of any party. When Liu filed her Amended Counterclaims after she prevailed on the Copyright claim and obtained dismissal of all of the other claims, Plaintiffs again failed to raise this compulsory counterclaim, thereby prejudicing Liu's right to secure evidence against it before losing access to the evidence.

### Fourth Affirmative Defense: *Res Judicata*

The claim is barred by the doctrine of *res judicata*, in that this Court has already accepted Plaintiffs' factual representations made in pursuit of their original (failed) trademark claim that undermine essential elements of their new claim.

### Fifth Affirmative Defense: Latches

The Amended Complaint is barred by the doctrine of latches. Plaintiffs were fully aware of Liu's activities since before July 2008, when they filed suit against her using a baseless copyright claim, and took action to persuade the Internet websites through which she sold to stop doing business with her by making false accusations of copyright infringement and trademark infringement. Shortly thereafter, they concluded all of their discovery. Insofar as required disclosures of evidence are concerned, they did not identify a single instance of injury to themselves or confusion on the part of any customer, relating in any way to their trademarks. After all, every one of the textbooks sold by Liu did indeed bear the unaltered marks Plaintiffs themselves affixed to them, and Plaintiffs themselves used the so-called "U.S. Edition" covers to promote the sale of their so-called "Foreign Edition" copies, and placed their marks, together

with the so-called "U.S. Edition" ISBN identifiers on the so-called "Foreign Edition" copies that may have had different covers and an additional set of different ISBN identifiers. Having succeeded in unlawfully shutting down Liu's business, and obtaining discovery from the third parties through which she was selling, their delay of approximately six years in bringing the instant action severely prejudices Liu, who cannot now even access her long closed accounts. There was no reason for delay.

### Sixth Affirmative Defense: Failure to State a Claim

The Complaint fails to state a claim for which relief may be granted. *(A Motion to Dismiss was denied by this court, holding Plaintiffs to a low standard of pleading and choosing not to consider, at that stage, Liu's evidence that Plaintiffs' know their allegations are false. The defense is being re-asserted here, to make clear that Liu does not concede that she should bear the burden of continuing on with a defense against such fraud.)*

### Seventh Affirmative Defense: First Amendment Right

The First Amendment to the United States Constitution bars plaintiffs' claims because, under the doctrine of *Shelley v. Kramer,* no federal court may lend its aid to private efforts to suppress speech in violation of the First Amendment. Liu has an absolute right, under the First Amendment and pursuant to 17 U.S.C. § 109, to sell the goods in issue. Plaintiffs' are, in purpose and effect, seeking to circumvent Liu's fundamental rights by asking this Court to impose an obligation on her to use only advertising approved by them, and to censor her freedom to inform prospective customers that the copies she sells are substantively the same works of authorship, or by cross-referencing the different IBSN identifiers used for copies of the identical work. Although this Court summarily rejected the First Amendment basis for Liu's Motion to Dismiss as a matter of law (allowing Plaintiffs to try to prove their false allegations), the First

Amendment must continue to inform the contours of Plaintiffs' efforts to force Liu to speak in a particular way or to prevent Liu from informing customers that Plaintiffs' two (or more) ISBNs for the same work of authorship do indeed correspond to the same work.

### Fifth Affirmative Defense: Trademark Misuse

The Pearson Trademarks and the Wiley Trademarks are unenforceable under the doctrine of Trademark Misuse, for two reasons. First, the sole purpose of pursuing the trademark claims is to unlawfully suppress price competition in the United States from sales of different copies of the same work of authorship that Plaintiffs had sold more cheaply elsewhere, directly contrary to First Amendment and Copyright Act rights, and in an effort to nullify the Copyright Act's express limitation on their distribution right. Second, the sole purpose of amending the trademark claim after losing their copyright claim and original trademark claim has been as negotiating leverage to threaten Liu with incurring more financial debt if she refuses to abandon her right to appeal dismissal of her antitrust claims, her right to file her tort claims in Texas, and her right to appeal the denial of her motion for over $300,000 in attorneys fees as the prevailing party. Since Liu has been out of business for six years, there is no basis for injunctive relief. Since Plaintiffs themselves have stressed to this Court that Liu is poor and unable to pay the debt she owes to her attorney, Plaintiffs obviously know that even an award of damages (on the wild assumption, *arguendo*, that they could prove any damages from reselling a textbook they already sold for a price satisfactory to them), it is clear that the claim is an abuse of the judicial process as an *in terrorem* effort to persuade Liu to drop her case against them and, instead, take her chances that her attorney will not initiate a likely fruitless collection action against her.

**Sixth Affirmative Defense: Unclean Hands**

The claims are barred by the doctrine of Unclean Hands. Plaintiffs' intent has always been to put Liu out of business. They unlawfully succeeded in doing so. They have profited handsomely from many years of running roughshod over what this Court described as "small time Internet entrepreneurs" whom they put out of business to prevent price competition and keep U.S. textbook prices artificially high, from whom they extracted unmerited settlements for bogus copyright infringement, and against whom they sometimes obtained default judgments and attorneys fees which, eventually, Liu proved to have been completely unmerited. They did so by grossly misrepresenting to this Court (against *pro se* defendants) both facts and law, thereby creating a semblance of ill-obtained "precedent" to fuel more baseless lawsuits. Their action against Liu, who was the first to stand up to them and eventually prevailed against them and put an end to their charade, is punitive, vindictive, and intended as leverage to get her to drop her meritorious claims against them. Finally, the allegations in the Amended Complaint are made with knowledge that they are false. The falsehood has been pointed out to them with documentary evidence (e.g., Docket Nos. 129 and 129-1), yet they steadfastly refuse to retract it. Finally, the confusion of which they complain is of their own doing, albeit with the intent to prevent U.S. college students from acquiring less expensive copies of their works.

**Seventh Affirmative Defense: Fair Use**

Plaintiffs' claims are barred by the trademark doctrine of fair use. The marks in question were placed on the products by Plaintiffs themselves. The ISBNs (though not trademarks, but which Plaintiffs complain help consumers match the "U.S. Edition" to the cheaper "Foreign Edition" counterparts) were also placed on the copies by Plaintiffs themselves (albeit sometimes on the inside). To the degree that Plaintiffs used different numbers in the ISBN system in order

to make it more difficult for U.S. students to find cheaper copies of the identical work of authorship, it was fair use for Liu to assist students in cross-referencing them, and to truthfully identify the trademarks Plaintiffs affixed to them.

### Eighth Affirmative Defense: Copyright Act Preemption

Plaintiffs' claims are preempted by Section 109 of the U.S. Copyright Act, which entitles Liu to sell the textbooks at issue in this case over Plaintiffs' objections, and leaves no room for Plaintiffs to inject a caveat that the advertisements for the sale must conform to their specifications and not cross-reference different market substitute copies of the same work that they sell at different prices.

### Ninth Affirmative Defense: Estoppel

Over a year ago, Liu asked (via interrogatory) that Plaintiffs identify "all documents and communications concerning a consumer having been confused whether a purchase of a copy of [Pearson's or Wiley's] works that the consumer made from Liu was a foreign edition copy." Each Plaintiff refused to do so, objecting that the interrogatory was "vague, ambiguous, unduly burdensome, overly broad, that the information it seeks is in the possession of third parties and not [Pearson or Wiley], and on the ground that pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant has already served 25 written interrogatories." (Plaintiffs gratuitously declared that an earlier interrogatory should be counted as three.) Having refused to identify any shred of evidence that any consumer was confused, which, if identified, would have permitted Liu to test the veracity of any identified evidence of confusion, Plaintiffs are equitably estopped from claiming to have an evidentiary basis for their claim that anyone was confused or misled.

## PRAYER FOR RELIEF

WHEREFORE, Defendant respectfully requests that this Court enter judgment in her favor, and:

1. Dismissing Plaintiffs' claim;

2. Enjoining Plaintiff from interfering with her sales of lawfully made copies of Pearson and Wiley books she owns, in the event that she chooses to try to rebuild her business;

3. Finding Plaintiffs' claim to be in violation of Rule 11 of the Federal Rules of Civil Procedure;

4. Awarding Liu her costs and attorneys fees in defending against this meritless and dishonest pleading; and

5. Providing all other equitable relief that the Court deems just and proper.


Respectfully submitted this 4th day of June 2014.

s/ John T. Mitchell
John T. Mitchell
Interaction Law
1629 K Street, NW, Suite 300
Washington, DC 20006
john@interactionlaw.com
(202) 415-9213

Attorney for Defendant Ganghua Liu
*Pro hac vice*

_____
Ganghua Liu